# STATE OF MICHIGAN

# COURT OF APPEALS

AGILITY HEALTH, L.L.C.,

        Plaintiff/Counter-Defendant-
        Appellee/Cross-Appellant,

v

FPCG HEALTH, L.L.C., d/b/a FORBES
PRIVATE CAPITAL GROUP,

        Defendant/Counter-Plaintiff-
        Appellant/Cross-Appellee.

UNPUBLISHED
July 28, 2016

No. 324571
Kent Circuit Court
LC No. 13-000830-CK

Before: METER, P.J., and BOONSTRA and RIORDAN, JJ.

METER, J. (*concurring in part and dissenting in part*).

I concur with the majority opinion insofar as it reverses the July 25, 2014, order regarding attorney fees and affirms the October 10, 2014, order regarding prejudgment interest. However, I dissent from the majority opinion with regard to the analysis and conclusion regarding the grant of summary disposition to defendant.

Under the engagement letter, plaintiff promised to pay defendant a placement fee equal to six percent of the gross proceeds of "any Transaction[.]" The letter defined "Transaction" as an offering of plaintiff's preferred, common stock or subordinated debt in a proposed private placement for the purpose of raising capital, funding plaintiff's operations, and making distributions to the existing shareholders. Pertinently, "Transaction" did not include any "sales to Canadian investors," except to two entities not pertinent here. Dictionaries do not define the word "investor," but they do define the word "invest." To "invest" is defined, in pertinent part, as "to commit (money) in order to earn a financial return[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). See also *Random House Webster's College Dictionary* (1997) (defining "invest," in part, as "to put (money) to use, by purchase or expenditure, in something offering potential profitable returns").

The Michigan Supreme Court has stated that it "is axiomatic that if a word or phrase [in a contract] is unambiguous and no reasonable person could differ with respect to application of the term or phrase to undisputed material facts, then the court should grant summary disposition to the proper party pursuant to MCR 2.116(C)(10)." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). However, "if reasonable minds could disagree about the

-1-

conclusions to be drawn from the facts, a question for the factfinder exists." *Id*. I conclude that reasonable minds could disagree about the identity of the investor in the present dispute.

The two parties to the exchange of $12.5 million for 1,250 class B membership units in plaintiff were Alaris USA and plaintiff. A subsidiary and its parent are separate entities. *JPMorgan Chase Bank NA v Malarkey*, 65 AD3d 718, 721; 884 NYS2d 787 (2009). Separate corporate entities are generally respected even if one corporation wholly owns another or if they share the same principals. *Application of Crespo*, 123 Misc 2d 862, 865; 475 NYS2d 319 (1984). Based on these rules, a reasonable person could conclude that Alaris USA, which is a Delaware corporation, was the investor.

However, there is also evidence to support plaintiff's argument that Alaris Royalty was the investor. The evidence showed that Alaris Royalty was contacted by Bloom Burton, a Canadian investment bank, about the possibility of investing in plaintiff; Alaris Royalty worked with Bloom Burton in conducting due diligence with regard to plaintiff; and Alaris Royalty sent a term sheet to plaintiff in which it proposed to invest several million into plaintiff. The sole purpose of Alaris USA, which is wholly owned and controlled by Alaris Royalty, is to acquire and hold interests in United States entities financed directly or indirectly by Alaris Royalty, and all of its financial activities are conducted by way of capital contributions or loans from Alaris Royalty. Distributions received by Alaris USA from plaintiff are eventually transmitted back to Alaris Royalty. Based on this evidence, a reasonable person could conclude that Alaris Royalty was the entity that committed money to plaintiff in order to earn a financial return and it simply used Alaris USA, its wholly owned and controlled subsidiary, as a vehicle to make that commitment.[1]

Because reasonable minds could disagree about the conclusions to be drawn from the facts, I conclude that the trial court erred in granting summary disposition to defendant. I would reverse the grant of summary disposition to defendant in the April 11, 2014, order and remand this case for further proceedings consistent with this separate opinion.

/s/ Patrick M. Meter

---

[1] A conclusion that Alaris Royalty was the investor would not pierce the corporate veil. The corporate existence of Alaris Royalty or Alaris USA is not being circumvented in order to hold either entity liable for an obligation of the other. See *Morris v New York State Dep't of Taxation & Fin*, 82 NY2d 135, 140; 623 NE2d 1157 (1993) ("[t]he doctrine of piercing the corporate veil is typically employed by a third party seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation").